IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| M P ZARAT LIMITED et al | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Civil Action No. H-05-4102 |
| v. | § | |
| JUMBO NAVIGATION NV | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER
### INCORPORATING FINDINGS OF FACT AND CONCLUSIONS OF LAW

M.P. Zarat Limited (hereafter "Zarat") and Floating Production Systems, Inc. ("FPS") brought this suit against Jumbo Navigation, N.V. ("Jumbo"), seeking a determination that there was no contract to carry cargo between FPS and Zarat as shippers and Jumbo as the carrier. If there is a contract, the parties are agreed that the dispute will proceed to arbitration in London. If there is no contract, there will presumably be no need for any arbitral proceedings.

Before trial, which was to the Court without a jury, the parties agreed to re-align themselves. Jumbo, which is asserting the existence of a contract, thus became the plaintiff and FPS and Zarat the defendants. In order to avoid confusion, however, the Court will refer to the parties by their names rather than by their procedural posture in this case.

### A. Jurisdiction and Venue

This Court has jurisdiction under, *inter alia*, 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391(a)(2) because all or substantially all of the events giving rise to the cause of action occurred in this District.

### B. Overview

Both the testimony and the numerous exhibits in this case demonstrate that the parties' course of dealing fell far short of that which should be expected in any commercial transaction, particularly one involving international carriage of goods and hundreds of thousands of dollars. On balance, however, the Court does find and hold that a contract, whether oral or written, did exist, and that the matter does need to be referred to arbitration for a calculation of damages.

### C. Witnesses

Jeroen Kock was Jumbo's only witness. Rick Fielder and Jalel Mahfoudhi were the only witnesses for FPS and Zarat. The Court found all three of the witnesses to be credible, and does not wish to be understood as suggesting that anyone told anything other than the truth as he believed it to be. The difficult issue concerns the legal effect, if any, of the words and deeds of each of these actors.

### D. The Cargo

The cargo that was to be transported was a "cellar deck" that was a part of a drill platform to be erected by Zarat in the Mediterranean Sea offshore from Tunisia. The cellar deck weighed approximately 600 tons, or 1,200,000 pounds. (FPS/Zarat Ex. 13.) The cellar deck was approximately 100 feet long, 75 feet wide, and 40 feet high. Prior to the shipment of the cellar deck to the Mediterranean, the deck needed to be transported from New Iberia to New Orleans, Lousiana,

where it would be loaded onto Jumbo's ship, the M/V FAIRMAST. The FAIRMAST was a heavy load carrier with a gross tonnage of 6,792 and sailing under the flag of the Netherlands. All parties recognized that the transportation of the cellar deck from New Iberia to New Orleans required substantial effort and expense by Zarat, which was not expressly covered by the contract that is alleged to exist between Jumbo and FPS/Zarat.

### E.    The Communications Between and Among the Parties

The parties adduced numerous exhibits and much testimony about communications back and forth between Jumbo, on the one hand, and FPS as agent for Zarat on the other. The Court does not propose to go through each communication. The record is clear that Fielder, the President of FPS, was in charge of negotiations for FPS and entered into communication with Kock, Jumbo's local transportation agent. (Jumbo's Exs. 1-3.)

On July 5, 2005, Kock sent a written firm offer via e-mail to FPS to transport on the FAIRMAST one cellar deck of 600 tons from New Orleans to offshore Tunisia for a lump sum freight of $600,000 with all material terms included and the Jumbo's booking note terms specifically incorporated. (Jumbo Ex. 3.)

Also on July 5, Fielder sent a written counter-offer via e-mail to Kock on the same terms as the Jumbo offer but for a lump sum freight of $450,000. This offer was attached to the e-mail offer sent to FPS. (Jumbo Ex. 4.)

On July 6, 2005, Kock sent an email to FPS stating that "Jumbo herewith accepts your below basis SUBJECT: Jumbo to confirm booking within 24 hours after agreeing to main terms. Please confirm by return." (Jumbo Ex. 5.)

The "below" reference was to Fielder's email of the previous day proposing the $450,000 price. That e-mail appeared below Kock's e-mail of July 6.

On July 7, Kock sent an email to Fielder and Mahfoudi in which he twice expressed thanks to them for the booking and included as attachments Jumbo's form contract provisions. (Jumbo Ex. 6.) On the same day, a meeting was held which Fielder, Mahfoudi and Kock attended in person. According to Jumbo, FPS's counteroffer of July 6, along with its main terms, was orally accepted by Kock at this same meeting, and the three individuals shook hands that an agreement was reached.

Jumbo takes the position that a binding agreement was created no later than the July 7 meeting. On July 8, Kock sent an e-mail to Fielder saying, "Attached please find the Booking confirmation and, again, thanks for the opportunity to work this one together. Will have the originals sent to you by courier for your signature next week." (Jumbo Ex. 10.) "The originals" were never signed.

FPS/Zarat does not altogether reject the notion that there was an oral contract entered into on July 7. (FPS and Zarat's Third Amended Proposed Findings of Fact and Conclusions of Law at 17.) They forcefully contend, however, that this begs the question of what the contract comprehended. In particular, FPS and Zarat note that the e-mail of July 5 from Fielder to Kock informed Jumbo that Zarat could agree to pay $450,000.00 predicated upon Zarat's consideration of the work and costs necessary to get the subject cargo from New Iberia to New Orleans. "In other words, for the sake of argument, we presume there was a contract between Zarat and Jumbo to carry Zarat's cargo that Zarat could, in the words of Kock, cancel at any time, Zarat's 'option.'" *Id.* at 18.

To bolster their competing views, Kock on the one hand and Fielder and Mahfoudi on the other offered extensive testimony, and both sides submitted dozens of exhibits, the admissibility of which was agreed upon.

After careful consideration, the Court finds and holds that an enforceable contract was entered into not later than July 8, 2005. Zarat was, from that point, contractually obligated to pay $450,000 to Jumbo for ocean carriage of one cellar deck on the FAIRMAST. The logistics of how Zarat was to get the cellar deck from New Iberia to New Orleans, though clearly critical to Zarat, were not conditions precedent to the existence of a contract between Jumbo and FPS/Zarat.

Further, although there were many more negotiations between Kock and Fielder to modify the contract so that additional cargo could be carried on the same FAIRMAST voyage, those negotiations did not vitiate the contract that had been entered. (Jumbo Exs. 11-25.) Moreover, when the full identifying information of the contracting party was requested by Kock, FPS as agent provided it without any reservation or objection. (Jumbo Ex. 24.) In August 2005, FPS continued to act as though a carriage agreement existed, including confirming that Zarat was the appropriate contracting party and requesting Jumbo to delay the load date. (Jumbo Exs. 26-29.)

The Court finds validation of its ruling as to the existence of a contract in Kock's testimony regarding industry practice, which was not controverted. To the extent FPS or Zarat was unfamiliar with industry practice, their lack of awareness is not a contractual defense.

The Court's findings and conclusions are not, however, by any means entirely adverse to FPS and Zarat. The Court finds and holds that FPS was acting at all times within its capacity as an agent. Under applicable principles of agency law, it did not breach any contract with Jumbo. The Court further finds and holds that FPS and Zarat (and Jumbo for that matter) did not engage in any conduct

that would render them subject to principles of estoppel or quasi-estoppel. The Court also specifically disclaims any finding or holding as to Jumbo's damages and, indeed, as to whether Jumbo even suffered any damage from the evidence presented. No opinion could possibly be rendered as to whether Jumbo was able to arrange for alternative cargo for the FAIRMAST so that no damages were suffered or, conceivably, an even better freight rate was obtained.

The Court has relied on, among others, the following principles of law:

1. To the extent not inconsistent with admiralty principles, state contract law is applicable to maritime contracts. *Ham Marine Inc. v. Dresser Industries, Inc.*, 72 F.3d 454, 459 (5th Cir. 1995).

2. "[I]t is an established rule of ancient respectability that oral contracts are generally regarded as valid by maritime law." *Kossick v. United Fruit*, 365 U.S. 731, 734 (1961) (footnote omitted).

3. Unsigned agreements are held enforceable where the parties have a meeting of the minds on the essential terms of their agreement. *E.A.S.T. Inc. of Stamford, Conn. v. M/V ALAIA*, 673 F. Supp. 796, 799 (E.D. La 1987).

4. A "booking note" is sent after the main terms of the contract of affreightment have been agreed and is a confirmation of these binding terms. *See Itel Container Corp. v. M/V "Titan Scan"*, 139 F.3d 1450, 1451 (11th Cir. 1998).

5. The inclusion of a "subject" provision in a fixture does not create a fatal condition precedent or subsequent unless specifically intended as such. *See, e.g., U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d. 135, 150 (2d Cir. 2001).

Any finding of fact that is a conclusion of law shall be so understood, and vice-versa.

**IT IS SO ORDERED.**

Signed at Houston, Texas on this ___6th___ day of June, 2007.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE